***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Rowell, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 19 March 2002 as:
 STIPULATIONS
1. That all the parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction of this matter.
2. That all parties have been correctly designated, and there is no question as to the misjoinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. An employer-employee relationship existed between the employee-plaintiff and the employer-defendant, Sara Lee Corporation which is insured with Lumberman's Mutual Casualty/Kemper Insurance Company.
5. Industrial Commission Form 22.
6. The parties stipulated into evidence as Stipulated Exhibit #1, the Pre-trial agreement, as modified by parties.
7. The parties stipulated into evidence as Stipulated Exhibit #2, medical reports.
8. The parties stipulated into evidence as Stipulated Exhibit #3, Industrial Commission Form 22.
9. The parties stipulated into evidence as Stipulated Exhibit #4, videotape along with plaintiff's written conditions.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff applied for and was hired as a pin truck operator with defendant-employer in September of 2000. Plaintiff completed a written application, was interviewed by Ms. Ramona Leach (a registered nurse at defendant-employer), and reviewed the pin truck operator job before it was offered to her.
2. Ms. Leach completed, in plaintiff's presence, the health history form based on information plaintiff provided. Plaintiff subsequently signed this form before she was offered the pin truck operator job. Plaintiff admitted at the hearing that she knew that, by signing the health history form, she was affirming that she was telling the truth on it and subject to dismissal for any misrepresentations she made. Ms. Carolyn Strider, the Human Resources Manager at defendant-employer for the last twenty-five years, testified that an employee's answers to the health history questions determine whether the employee is approved for a particular job.
3. Plaintiff was previously employed at Black Decker, Household Products, Inc., and Windemere Corporation. In these previous employments, plaintiff worked for many years in jobs that required repetitive motion using her hands and fingers. Plaintiff has received significant medical treatment involving her hands and fingers since at least May of 1998. She was diagnosed with left third and fourth trigger finger, left carpal tunnel syndrome, and right fourth and fifth trigger finger in 1998. She underwent left third and fourth trigger finger and right fourth and fifth trigger finger surgical release in November of 1998. Prior to plaintiff's employment with defendant-employer, plaintiff had entered into settlement agreements with Black Decker, Household Products, Inc. and Windemere Corp. for trigger fingers of the right and left hands, which were approved by the Industrial Commission in 1999 and 2000.
4. Plaintiff never mentioned during her health history evaluation with Ms. Leach that she had prior surgery on her hands and fingers. Plaintiff never informed the defendant-employer about her prior medical problems despite that she was specifically asked about them during the pre-placement health assessment. Plaintiff also never informed the defendant-employer that she had ever filed a Workers' Compensation claim for an occupational disease, had received Workers' Compensation benefits or settlements, or that she had been in an automobile accident. Plaintiff would have been referred to her primary care physician or the company doctor for a determination of whether placement in the pin truck operator job was appropriate if plaintiff had mentioned a history of bilateral trigger finger.
5. Plaintiff was shown the pin operator position before she accepted it. Plaintiff did not tell anyone with defendant-employer that she thought she may have problems performing the pin truck operator job after learning of its required duties. Plaintiff was hired by defendant-employer as a pin truck operator based on plaintiff's misrepresentations and intentional omissions regarding her health history.
6. Ms. Janice Wassack, an industrial engineer with defendant-employer, testified about the physical requirements of the pin truck operator job. Ms. Wassack testified that the pin truck operator position is a light duty job. This position requires the operators to lift one spool of thread, weighing no more than 8.2 pounds, with two hands and load the spool onto a truck. After the spools are loaded onto the trucks, the operator rolls the truck to a staging area, only a few feet away, to be picked up by another worker. The trucks roll easily, regardless of load weight. Defendant-employer's company policy dictates that two hands are to be used to lift one spool. Defendant-employer also trains its employees to lift one spool at a time with both hands.
7. Pin truck operators with defendant-employer are not paid on a production basis. They are paid by the hour. The pin truck operator job can be performed at the employee's own pace, and does not require that an employee work constantly without interruption or breaks.
8. On November 9, 2000, plaintiff called Ms. Leach with complaints of a several week history of right shoulder and hand pain. Ms. Leach took notes of her conversations with plaintiff, as per company policy, and maintained them in plaintiff's medical file. The November 9, 2000 note shows that plaintiff denied that her problems were due to a work injury, and shows that plaintiff denied having problems or numbness doing her job. This November 9, 2000 note also shows that plaintiff was informed of the process for filing a Workers' Compensation claim, and the need for filing an incident report if plaintiff feels that she has a work-related injury.
9. On January 8, 2001, plaintiff called Ms. Leach again and informed her that she had seen her doctor on December 23, 2000 with complaints concerning her right shoulder and arm. This January 8, 2001 note shows that plaintiff had not filed an incident report or reported any injuries to her work supervisor. This January 8, 2001 note also shows that plaintiff was again informed of the process for filing Workers' Compensation claims.
10. Plaintiff called Ms. Leach again on January 22, 2001. Plaintiff reported during this conversation that she thought her problems were work-related. Plaintiff subsequently went to Ms. Leach's office on January 23, 2001, to complete an incident form. On January 23, 2001, plaintiff asked Ms. Leach what date she should fill in as her injury date. Ms. Leach informed plaintiff that she could not advise her what date to put as her injury date. Plaintiff, therefore, listed January 5, 2001, as her date of injury.
11. Plaintiff had actually sought medical treatment with Dr. Patty Shevlin on December 20, 2000 and December 22, 2000 for right shoulder pain and right middle trigger finger problems and pain. On December 20, 2000 plaintiff reported that her right upper extremity symptoms had been ongoing for several weeks. Plaintiff did not report on December 20, 2000 or December 22, 2000 that her complaints were work related. Thomas Osteen, M.D., examined plaintiff on February 7, 2001. He noted that plaintiff reported no specific injury that preceded the onset of her symptoms and also that her complaints were not work-related. Dr. Osteen's assessment of plaintiff was right third and fourth trigger finger and right shoulder pain. Dr. Osteen recommended an MRI on Plaintiff's right shoulder and for nerve conduction studies to rule out carpal tunnel syndrome. The MRI, taken on February 14, 2001 of plaintiff's right shoulder, was normal.
12. On February 21, 2001, Dr. Osteen recommended that plaintiff undergo right third and fourth trigger finger release and right carpal tunnel release. He performed these procedures on march 16, 2001. On May 21, 2001, Dr. Osteen released plaintiff to return to unrestricted work. Plaintiff has not sought medical treatment for her hands or fingers since May of 2001. Plaintiff has been capable of returning to full duty work since May 21, 2001.
13. Plaintiff applied for short term disability benefits on February 12, 2001. She stated on her short-term disability application that her diagnosed right upper extremity conditions did not arise out of her employment with defendant-employer. Dr. Osteen also certified when he completed his portion of plaintiff's application for short-term disability benefits that plaintiff's right upper extremity conditions were not due to an injury or illness that arose out of her employment with defendant-employer. Plaintiff subsequently received $2,687.15 in short-term disability benefits from a 100% employer-funded plan.
14. Plaintiff returned to her regular job at defendant-employer on May 23, 2001. Defendant-employer, however, terminated the plaintiff on June 21, 2001, pursuant to company policy, because she had falsified employment documents.
15. Plaintiff applied for and received unemployment benefits after defendant-employer terminated her. She certified in her application for unemployment benefits that she could work. She received $2,700.00 in unemployment benefits after leaving defendant-employer. Plaintiff has not worked since her termination. Plaintiff has no medical justification for not engaging in unrestricted work since June 21, 2001.
16. Plaintiff did not honestly answer questions about her medical history when asked by Ms. Leach during the pre-placement examination. She stated that she did not have a history of arthritis, back pain, tendonitis, carpal tunnel syndrome, or bladder, stomach, or urological problems. This was not true. She stated that she had not filed a Workers' Compensation claim, received any Workers' Compensation or had an occupational disease. This was not true. She stated that she had not been in an automobile accident. This was not true. Plaintiff was terminated by defendant-employer on June 21, 2000 for violation of company policy for falsification of employment documents.
17. Plaintiff did not put forth any expert opinion evidence or testimony that her alleged right upper extremity conditions are causally related to her employment with defendant-employer. Plaintiff also did not put forth any expert opinion evidence or testimony that her employment at defendant-employer placed her at an increased risk of developing her alleged right upper extremity conditions. There is no evidence in the record that plaintiff's alleged right upper extremity conditions are causally related to her employment with defendant-employer. There is no evidence in the record that plaintiff's employment with defendant-employer placed her at an increased risk of developing her alleged right upper extremity conditions.
18. After giving due consideration to plaintiff's testimony and the record evidence along with the medical evidence, greater weight is given to the record evidence and medical evidence which does not support or corroborate plaintiff's allegations.
19. Plaintiff has failed to prove by the greater weight of the competent credible evidence and medical evidence of record that she sustained an injury by accident on January 5, 2001 that resulted in any disability or need for medical care.
20. Plaintiff has failed to prove by the greater weight of the competent credible evidence and medical evidence of record that she developed on January 5, 2001 an occupational disease that was caused by her work-related duties with defendant-employer, or that her work-related duties with defendant-employer was a significant contributing factor and/or aggravating factor in the development of any occupational disease, disability, or need for medical treatment.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSION OF LAW
1. The greater weight of the evidence reveals that plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer on January 5, 2001 that resulted in any disability or need for medical treatment.
2. The greater weight of the evidence reveals that plaintiff's work-related duties with defendant-employer did not cause the development of any occupational disease, disability, or need for medical treatment. Furthermore, the greater weight of the evidence reveals that plaintiff's work-related duties with defendant-employer were not a significantly contributing factor and/or aggravating factor in the development of any occupational disease, disability, or need for medical treatment.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim for workers' compensation benefits is DENIED.
2. Each side shall bear their own costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/ ____________________ BERNADINE S. BALLANCE COMMISSIONER